UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**MIRANDA BAINES-THOMAS, on behalf of
herself and all others similarly situated,**

      **Plaintiff,**

    **v.**

**INTOUCH CREDIT UNION,**

      **Defendant.**

_____/

                      **JURY TRIAL DEMAND**

                      **CLASS ACTION**

## CLASS ACTION COMPLAINT

Plaintiff Miranda Baines-Thomas ("Plaintiff"), individually and on behalf of the Classes of persons preliminarily defined below (the "Classes"), makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### NATURE OF THE ACTION

1. Plaintiff brings this action individually and on behalf of Classes of all similarly situated consumers against Defendant InTouch Credit Union ("Defendant"), arising from its routine practices of (1) assessing $35 fees ("OD Fees") on transactions that did not actually overdraw checking accounts and (2) multiple fees on an item.

2. Defendant misleadingly and deceptively misrepresents its fee practices including, upon information and belief, in its take-it-or-leave-it form adhesion contract.

3. This is a civil action seeking monetary damages, restitution, and declaratory and injunctive relief.

4.      As described herein, Defendant's practices violate Texas common law and, upon information and belief, the contract. These practices also unjustly enrich Defendant at its account holders' expense.

5.      Defendant's improper scheme to extract funds from account holders has victimized Plaintiff and hundreds of other similarly situated consumers. Unless enjoined, Defendant will continue to engage in these schemes and will continue to cause substantial injury to its consumers.

6.      Plaintiff asserts this action pursuant to Fed. R. Civ. P. 23, *et. seq.*, on behalf of herself and all others similarly situated throughout Texas, seeking monetary damages, restitution, and declaratory and injunctive relief.

## PARTIES

7.      Plaintiff is a citizen and resident of the Memphis, Shelby County, Tennessee and had a checking account with Defendant at all relevant times hereto.

8.      Defendant is a credit union with over $1 billion in assets. Defendant's headquarters and principal place of business is in Plano, Collin County, Texas. Defendant provides retail banking services to its members, including Plaintiff and members of the putative classes. Defendant can be served by way of its registered agent, Valerie E. Williams, located at 5640 Democracy Drive Plano, Texas 75024.

## JURISDICTION AND VENUE

9.      The Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims and the members of the putative Classes exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this class action on behalf of proposed Classes that are

comprised of over one hundred members, and because one of the members of the proposed Classes are citizens of a different state than Defendant.

10.    The Court has personal jurisdiction over Defendant because Defendant conducted business in and throughout the Eastern District of Texas at all times material hereto.

11.    This Court also has jurisdiction because Plaintiff and Defendant are all citizens of a different state.

12.    Defendant regularly and systematically conducts business and provides retail banking services in this state and provides retail banking services to customers in this state, including Plaintiff and members of the putative Classes. As such, it is subject to the jurisdiction of this Court.

13.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(3) because Defendant is subject to personal jurisdiction in this District.

## BACKGROUND FACTS

14.    Overdraft fees and insufficient funds fees ("NSF fees") are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $34.5 billion from overdraft fees. Overdraft Revenue Inches Up in 2018, https://bit.ly/3cbHNKV.

15.    Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. Overdrawn: Consumer Experiences with Overdraft, Pew Charitable Trusts 8 (June 2014), https://bit.ly/3ksKD0I.

16.    Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of OD or NSF fees entirely. *See* Hugh

Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

17.    In line with this industry trend, the New York Attorney General recently asked other industry leading banks to end the assessment of all OD Fees by the summer of 2022. *NY Attorney General asks banks to end overdraft fees*, Elizabeth Dilts Marshall, Reuters (April 6, 2022).

18.    Through the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue.

## I.    DEFENDANT ASSESSES TWO OR MORE FEES ON THE SAME ITEM RETURNED FOR INSUFFICIENT FUNDS

19.    Defendant unlawfully maximizes its already profitable fees through the deceptive and, the contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee, on an item.

20.    Unbeknownst to consumers, when Defendant reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that is subject to yet another fee. But Defendant's contract never states that this counterintuitive and deceptive result could be possible and, in fact, promises the opposite.

21.    The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

22.     In its latest issue of Consumer Compliance Supervisory Highlights, the FDIC again addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. (*see* FDIC Consumer Compliance Supervisory Highlights, Mar. 2022). FDIC examiners have scrutinized this issue in recent exames, with some exams remaining open pending resolution of the issue.

23.     In Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers about re-presentment practices and fees" may be deceptive.

24.     In the latest issue of the CFPB's Supervisory Highlight, the Bureau scrutinized junk fees, including the practice of charging multiple NSF fees, stating:

> Supervision found that institutions engaged in unfair acts or practices by charging consumers multiple NSF fees when the same transaction was presented multiple times for payment against an insufficient balance in the consumer's accounts, potentially as soon as the next day. The assessment of multiple NSF fees for the same transaction caused substantial monetary harm to consumers, totaling millions of dollars. These injuries were not reasonably avoidable by consumers, regardless of account opening disclosures. And the injuries were not outweighed by countervailing benefits to consumers or competition.

Consumer Financial Protection Bureau, "Supervisory Highlights Junk Fees Special Edition" (March 2023).

25.     This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is reprocessed for payment multiple times.

26.     Upon information and belief, the contract allows Defendant to take certain steps when paying a check, electronic payment item, or ACH item when the accountholder does not have sufficient funds to cover it. Specifically, Defendant may (a) pay the item and charge a $35 fee; or (b) reject the item and charge a $35 fee.

27.     In contrast to the contract, however, Defendant regularly assesses two or more $35 fees on an item.

## A. The Imposition of Multiple Fees on a Single Item Violates Defendant's Express Promises and Representations

28.     Upon information and belief, the contract promises that a single fee will be assessed on an item.

29.     The same "item" on an account cannot conceivably become a new one when it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

30.     Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

31.     Upon information and belief, Defendant's contract never discussed a circumstance where Defendant may assess multiple fees for a single check, electronic payment item, or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

32.     In sum, upon information and belief, Defendant promises that one fee will be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the contract when it charged more than one fee per item.

33.     Reasonable consumers understand any given authorization for payment to be one, singular "item."

34.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Upon information and belief, nowhere do Defendant and its customers agree that Defendant will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

35.     Consumers reasonably understand that Defendant's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

36.     Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it—something, upon information and belief, Defendant here did not do.

37.     Community Bank, NA, discloses its fee practice in its online banking agreement, in all capital letters, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

38.     Upon information and belief, Defendant's contract provides no such authorization, and actually promises the opposite— Defendant may charge, at most, a fee, per item.

**B.  Plaintiff's Experience**

39.     In support of Plaintiff's claim, Plaintiff offers an example of fees that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

40.     On or around January 11, 2021, Plaintiff was assessed multiple fees on an item.

41.     On or around January 14, 2021, Plaintiff was assessed multiple fees on an item.

42.     On or around June 3, 2021, Plaintiff was assessed multiple fees on an item.

43.     On or around July 14, 2021, Plaintiff was assessed multiple fees on an item.

44.     On or around March 12, 2020, Plaintiff was assessed multiple fees on an item.

45.     On or around April 13, 2020, Plaintiff was assessed multiple fees on an item.

46.     On or around November 24, 2020, Plaintiff was assessed multiple fees on an item.

47.     On or around November 30, 2020, Plaintiff was assessed multiple fees on an item.

48.     Plaintiff understood the payment to be a single item as is laid out in the contract, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

## II.    DEFENDANT ASSESSED FEES ON TRANSACTIONS THAT DO NOT OVERDRAW THE ACCOUNT

49.     In addition to the Multiple NSF Fees charged to Plaintiff, Defendant also charged OD Fees on transactions that did not overdraw Plaintiff's account. In support of Plaintiff's claim, Plaintiff offers the following examples of fees that should not have been assessed against Plaintiff's checking account.

50.     On January 19, 2021, Defendant charged Plaintiff a $35.00 OD Fee on a purchase, even though, according to Defendant's own account statements, the balance on the account was $705.08 after the purchase.

51.     On March 24, 2021, Defendant charged Plaintiff a $35.00 OD Fee on a purchase, even though, according to Defendant's own account statements, the balance on the account was $1,674.08 after the purchase.

52.     On March 29, 2021, Defendant charged Plaintiff a $35.00 OD Fee on a purchase, even though, according to Defendant's own account statements, the balance on the account was $5.79 after the purchase.

### III.     NONE OF THESE FEES WERE ERRORS.

53.     The improper fees charged by Defendant to Plaintiff's account were not errors by Defendant, but rather were intentional charges made by Defendant as part of its standard processing of transactions.

54.     Plaintiff therefore had no duty to report the fees as errors because they were not; instead, they were part of the systematic and intentional assessment of fees according to Defendant's standard practices.

55.     Moreover, any such reporting would have been futile as Defendant's own contract admits that Defendant made a decision to charge the fees.

### IV.     THE IMPOSITION OF THESE IMPROPER FEES BREACHES DEFENDANT'S DUTY OF GOOD FAITH AND FAIR DEALING

56.     Parties to a contract are required not only to adhere to the express conditions of the contract but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied duty to act in accordance with account holders' reasonable expectations and means that the bank or credit union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the bank or credit union has a duty to honor transaction requests in a way that is fair to its customers and is prohibited from exercising its discretion to pile on even greater penalties on its account holders.

57.     Here—in the adhesion agreements Defendant foisted on Plaintiff and its other customers—upon information and belief, Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged improper fees.

58.     Defendant abuses its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it assesses fees in this manner. By *always* assessing these fees to the prejudice of Plaintiff and other customers, Defendant breaches their reasonable expectations and, in doing so, violates its duty to act in good faith. This is a breach of Defendant's implied covenant to engage in fair dealing and to act in good faith.

59.     It was bad faith and totally outside Plaintiff's reasonable expectations for Defendant to use its discretion in this way.

**60.**     When Defendant charges improper fees in this way, upon information and belief, Defendant uses its discretion to interpret the meaning of key terms in an unreasonable way that violates common sense and reasonable consumers' expectations. Defendant uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more fees.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action individually and on behalf of all others similarly situated. The proposed classes are defined as:

> The Multiple Fee Class: All accountholders of InTouch Credit Union who, during the applicable statute of limitations period through the present, were assessed multiple fees on an item by InTouch Credit Union.

The Overdraft Class: All accountholders of InTouch Credit Union who, during the applicable statute of limitations, were assessed an overdraft fee on a transaction that did not overdraw the Class Member's account.

62.     The Overdraft Class and the Multiple Fee Class are collectively referred to herein as the "Classes."

63.     Excluded from the Classes are Defendant, its subsidiaries and affiliates, its officers, directors, the members of their immediate families, and any entity in which Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

64.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes if necessary, before this Court determines whether certification is appropriate.

65.     This case is properly brought as a class action under Fed. R. Civ. P. 23, *et. seq.*, and all requirements are met for the reasons set forth in the following paragraphs.

66.     *Numerosity*. The members of the Classes are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to Class discovery, the Classes consist of many thousands of members, the identity of whom are within the exclusive knowledge of Defendant and can be ascertained only by resorting to Defendant's records. Through the evaluation of Defendant's data, it is possible to identify all members of the Classes and the amount of improper fees paid by each Class member. Such specific information is not otherwise available to Plaintiff, but must be maintained pursuant to federal law, and is subject to suitable discovery.

67.     *Commonality*. There are numerous questions of law and fact common to the Classes relating to Defendant's business practices challenged herein, and those common questions

predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

- o Whether Defendant assess OD Fees on transactions that did not overdraw the account;

- o Whether Defendant assesses multiple fees on an item;

- o Whether these practices breach the contract;

- o Whether Plaintiff and other members of the Classes have sustained damages as a result of Defendant's assessment and collection of the improper fees;

- o Whether Defendant breached the covenant of good faith and fair dealing;

- o Whether Defendant unjustly enriched itself to the detriment of Plaintiff and members of the Classes;

- o The proper measure of damages; and

- o The declaratory and injunctive relief to which the Classes are entitled.

68. *Typicality.* Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by Defendant, as described herein.

69. *Adequacy of Representation.* Plaintiff is an adequate representative of the Classes because Plaintiff has a Defendant checking account and has suffered damages as a result of Defendant's assessment and collection of improper fees. In addition:

- o Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

o   There is no hostility of interest between Plaintiff and the unnamed Class members;

o   Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

o   Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

70.    *Predominance.* The questions of law and fact common to the Classes as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

71.    *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since the financial resources of Defendant are enormous, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

72.    All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Overdraft Class)

73.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

74.     Plaintiff and Defendant have contracted for bank account deposit, checking, ATM, and debit card services.

75.     Defendant mischaracterized in the contract its true overdraft practices and breached the express terms of the contract.

76.     No contract provision authorizes Defendant to charge OD Fees when the account is not overdrawn.

77.     Under Texas law, the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith is also mandated by the Uniform Commercial Code ("UCC"), which covers banking transactions.

78.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

79.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of

good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

80.    Defendant has breached the covenant of good faith and fair dealing through its overdraft policies and practices as alleged herein.

81.    Defendant harms consumers by abusing its contractual discretion in a number of ways that no reasonable customer could anticipate.

82.    Plaintiff and members of the Overdraft Class have performed all, or substantially all, of the obligations imposed on them by the Contract.

83.    Plaintiff and members of the Overdraft Class have sustained damages as a result of Defendant's breach of the contract and breach of the covenant of good faith and fair dealing.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Multiple Fee Class)**

84.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

85.    Plaintiff and Defendant have contracted for bank account deposit, checking, ATM, and debit card services.

86.    Defendant mischaracterized in the contract its true fee practices and breached the express terms of the contract.

87.    No contract provision authorizes Defendant to charge multiple fees on an item.

88.    Under Texas law, the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith is also mandated by the Uniform Commercial Code ("UCC"), which covers banking transactions.

89.    Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

90.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

91.    Defendant has breached the covenant of good faith and fair dealing through its overdraft policies and practices as alleged herein.

92.    Defendant harms consumers by abusing its contractual discretion in a number of ways that no reasonable customer could anticipate.

93.    Plaintiff and members of the Multiple Fee Class have performed all, or substantially all, of the obligations imposed on them by the contract.

94.    Plaintiff and members of the Multiple Fee Class have sustained damages as a result of Defendant's breach of the contract and breach of the covenant of good faith and fair dealing.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Classes)**

95.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

96.     Plaintiff, individually and on behalf of the Classes, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's breach of contract claim and applies only if the parties' contract is deemed unconscionable or otherwise unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees.

97.     By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed fees upon Plaintiff and the members of the Classes that are unfair, unconscionable, and oppressive.

98.     Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and the members of the Classes. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and the members of the Classes.

99.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the members of the Classes.

100.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

101.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to retain the benefits it received, and is still receiving, without justification, from the imposition of OD Fees on transactions that did not overdraw the account and multiple fees on an item on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

102.    The financial benefits derived by Defendant rightfully belong to Plaintiff and the members of the Classes. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds collected by Defendant. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendant traceable to Plaintiff and the members of the Classes.

103.    Plaintiff and the members of the Classes have no adequate remedy at law.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court:

a.    Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

b.    Award Plaintiff and the Classes actual damages in amount according to proof;

c.    Award Plaintiff and the Classes restitution in an amount to be proven at trial;

d.    Award Plaintiff and the Classes pre-judgment interest in the amount permitted by law;

e.    Award Plaintiff and the Classes attorneys' fees and costs as permitted by law;

f.    Declare Defendant's practices outlined herein to be unlawful and a breach of contract;

g.    Enjoin Defendant from engaging in the practices outlined herein;

h.    Grant Plaintiff and the Classes a trial by jury;

i.    Grant leave to amend these pleadings to conform to evidence produced at trial; and

j.    Grant such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff, by counsel, demands trial by jury.

Dated: June 22, 2023                      Respectfully submitted,

                                          **THOMPSON LAW LLP**
                                          3300 Oak Lawn Avenue, 3rd Floor
                                          Dallas, Texas 75219
                                          Tel. 214/755-7777
                                          Fax 214/716-0116


                                           */s/Ryan L. Thompson*
                                          **RYAN L. THOMPSON**
                                          State Bar No. 24046969
                                          rthompson@triallawyers.com
                                          **RYAN H. ANDERSON**
                                          State Bar No. 24059380
                                          randerson@triallawyers.com

                                          **JOHNSON FIRM**
                                          Christopher D. Jennings*
                                          Tyler B. Ewigleben*
                                          Winston S. Hudson*
                                          610 President Clinton Avenue, Suite 300
                                          Little Rock, Arkansas 72201
                                          Telephone: (501) 372-1300
                                          chris@yourattorney.com
                                          tyler@yourattorney.com
                                          winston@yourattorney.com

                                          * *Pro Hac Vice* applications to be submitted
                                          *Counsel for Plaintiff and the Proposed Classes*